J-S36016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.N. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.H., MOTHER | : | No. 490 WDA 2022 |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  CP-02-AP-0000139-2021

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                          **FILED: NOVEMBER 22. 2022**

Appellant, C.H. ("Mother"), appeals from the order entered in the Allegheny County Court of Common Pleas, granting the petition of Appellee, the Allegheny County Office of Children, Youth and Families ("CYF"), for involuntary termination of Mother's parental rights to her minor child, P.N. ("Child").  We affirm.

The relevant facts and procedural history of this appeal are as follows. CYF first became involved with the family in 2015, when it received a referral because Mother and her oldest child had tested positive for marijuana.  CYF received additional referrals in 2015, 2017, and 2018.  Child was born in April 2018.  In February 2019, CYF opened a case after Mother was hospitalized

---

[*] Retired Senior Judge assigned to the Superior Court.

due to a physical altercation with a neighbor, and she had no one to care for her children while in the hospital. At that time, CYF implemented in-home services and referred Mother for a drug and alcohol assessment.

Despite CYF's involvement, the court adjudicated Child dependent on November 20, 2019. CYF placed Child into foster care where she has remained ever since. Around this time, CYF developed a family service plan ("FSP") and identified goals for Mother, including improvement of her mental health, maintaining sobriety, and the development of parenting skills. Nevertheless, Mother failed to meet these objectives.

On August 3, 2021, CYF filed a petition to terminate the parental rights of Mother and W.W. ("Father"). The court conducted a termination hearing on March 4, 2022. At the hearing, the court heard testimony from Angela Cameron, one of Mother's in-home service providers, and Deborah Moncrieff, a CYF supervisor. Mother did not attend the hearing or present witnesses, but her attorney was present to cross-examine the CYF witnesses and argue on Mother's behalf. By order entered March 30, 2022, the court terminated Mother's parental rights.[1] On April 27, 2022, Mother timely filed a notice of appeal and concise statement of errors per Pa.R.A.P. 1925(a)(2)(i).

Mother now raises one issue for our review:

> Did the trial court abuse its discretion and/or err as a matter
> of law in concluding that CYF met its burden of proving by

---

[1] The court also involuntarily terminated Father's parental rights, but he is not a party to the current appeal.

clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

(Mother's Brief at 6).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> > Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> > *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> > Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> > *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without

hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Mother's parental rights on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)  General rule.—** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of

time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

*    *    *

(8)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

*    *    *

**(b)    Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

On appeal, Mother argues that the record does not include sufficient evidence demonstrating that termination best serves the needs and welfare

of Child. Mother claims that the record lacks any expert opinions to support the court's determination. Mother maintains that she underwent a psychological evaluation, but CYF did not provide evidence of the evaluation for the court's consideration. Mother insists that CYF also failed to offer evidence of the impact "that termination would have on [Child], psychological or otherwise." (Mother's Brief at 11). Mother emphasizes that both of CYF's witnesses "acknowledged the love and bond between Mother and [Child]." (*Id.* at 16). Additionally, Mother complains that Child was at an appropriate age and development level to express a position regarding the preservation of the parent-child relationship, yet the court did not hear from Child. Based upon the foregoing, Mother concludes that this Court must reverse the order terminating her parental rights.[2] We disagree.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* (internal citations omitted).

> In this context, the court must take into account whether a
> bond exists between child and parent, and whether

---

[2] In her brief, Mother does not include a challenge to the evidence supporting termination under Section 2511(a).

termination would destroy an existing, necessary and beneficial relationship.

When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have his or her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001).

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult

circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Instantly, the court conducted the termination hearing on March 4, 2022.[3] CYF presented Ms. Cameron, who testified that Mother is one of her clients. Ms. Cameron continues to meet with Mother once each week. (***See*** N.T. Termination Hearing at 7). Ms. Cameron testified that CYF's goals for Mother included enrollment in parenting classes, a drug and alcohol assessment, and improved mental health. (***See id.*** at 8). Mother had mixed success in completing her goals. Although Mother completed a parenting class, she did not find a mental health program that would accept her. Additionally, Ms. Cameron explained that the drug and alcohol program at Pathways "did not believe [Mother] needed any treatment." (***Id.*** at 9).

CYF then presented Ms. Moncrieff, who testified that "Mother's very

_____

[3] Mother correctly notes that Child did not testify at the hearing. Our review of the record, however, reveals that Child's counsel was present at the hearing. Counsel indicated that she met with Child regarding the termination petition. During this meeting, Child "was not able to state a preference regarding termination and adoption due to her age and level of development." (N.T. Termination Hearing, 3/4/22, at 81).

attentive to the children when I'm around. Loving and caring." (*Id.* at 40). Ms. Moncrieff explained, however, that Mother's visits with Child were inconsistent, and Mother does not always provide confirmation prior to visiting Child. This lack of consistent contact "weakened the bond between mother and child." (*Id.*) Ms. Moncrieff acknowledged that Mother's visits were impacted by the COVID-19 pandemic, but Mother's visits continued to be inconsistent after pandemic-related restrictions eased. Specifically, Mother attended only three (3) out of nineteen (19) scheduled visits with Child between August 2020 and December 2020.[4] (*See id.* at 35). Mother began to visit Child "more regularly" beginning in March 2021. (*See id.* at 37).

In May 2021, Mother became entitled to weekly in-home visits, but she did not always confirm the visits. (*See id.* at 38). Ms. Moncrieff explained that Mother meets Child's psychological needs when she participates in weekly visits, which Child enjoys. Mother does not, however, meet Child's educational or developmental needs. Rather, Ms. Moncrieff emphasized that foster mother meets Child's educational, psychological, and developmental needs, and Child calls foster mother "mommy." (*See id.* at 41).

Ms. Moncrieff further described why CYF sought termination of Mother's parental rights:

> The prior referral is her giving birth to all of the children while smoking marijuana during her pregnancy. History of

---

[4] Ms. Moncrieff clarified that three (3) of the missed visits were not the fault of Mother. (*See* N.T. Termination Hearing at 36).

being depressed and mental health issues interfering with her ability to parent and not addressing her mental health issues. She'll get into treatment and leave. Doesn't stay long in treatment. She has a history of neglecting the children, leaving them home alone. Her history of a warrant, being arrested. The conditions which led the children being removed not addressed. Mental health sobriety. History of THC usage. DUI. And fighting, making poor decisions with the neighbors. [Interpersonal violence] history with her partner. Everything else that goes into parenting, civility, staying out of violence, confrontation, staying sober, address her mental health, not being arrested, not neglecting her children when she feels overwhelmed.

(*Id.* at 41-42). Based upon the foregoing, Ms. Moncrieff opined that termination was in Child's best interests. Child receives care and stability with foster mother. Despite the presence of some bond between Mother and Child, "[Child] needs stability. She needs to be able to feel safe and be able to thrive and grow without being in fear of what is next to come." (*Id.* at 43).

The court considered this testimony and determined that CYF presented sufficient evidence under Section 2511(b):

There was clear and convincing evidence presented that Mother was not meeting [Child's] medical needs, educational needs, emotional needs nor psychological needs. There were multiple times CYF discovered Mother leaving young children alone to fend for themselves. There is no doubt to [the c]ourt that Mother has love for [Child]. However, she has failed to establish her ability to provide a safe and stable home for [Child] nor her other children. At the March 4, 2022 termination of parental rights hearing, [the c]ourt considered all of Mother's progress, and determined that Mother has not shown her ability to properly care for [Child] since [Child] came into care in October of 2019. [The c]ourt believes the testimony from both the casework[er] and CYF supervisor was credible. There was absolutely no testimony that Mother had the

ability to keep [Child] safe nor meet her needs.

(Trial Court Opinion, 7/22/22, at 11).  We accept the court's determination.

To the extent that Mother now argues the court should have considered expert testimony about the impact of termination, such testimony is not required.[5]  *See In re Z.P., supra*.  Here, the inconsistency of Mother's contact with Child has weakened their bond.  (*See* N.T. Termination Hearing at 41-42).  Although Mother exhibits love and care to Child during the visits she attends, Mother has been unable to maintain the parent-child relationship.  *See In re B., N.M., supra*.  Terminating Mother's parental rights would not destroy an existing, necessary, and beneficial relationship for Child.  *See In re Z.P., supra*.  Based upon the foregoing, the record supports the court's conclusion that CYF presented clear and convincing evidence warranting termination under Section 2511(b).  *See id.*  Consequently, we affirm the order terminating Mother's parental rights to Child.

Order affirmed.

---

[5] Additionally, Ms. Moncrieff testified that she did not yet have the psychologist's individual evaluation of Mother at the time of the termination hearing.  (*See* N.T. Termination Hearing at 32).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/22/2022